IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 4:18-CV-202-FL

| | | |
|---|---|---|
| LENTON CREDELLE BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| HEDYT PHYLBECK; and BAILEY AND DIXON, LLP, | ) | ORDER |
| | ) | |
| | ) | |
| Defendants. | ) | |

This matter comes before the court on frivolity review of plaintiff's <u>pro se</u> complaint, pursuant to 28 U.S.C. § 1915(e)(2)(B). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b), United States Magistrate Judge Robert T. Numbers, II, entered a memorandum and recommendation ("M&R"), wherein it is recommended that the court dismiss in part plaintiff's claims. (DE 4). Plaintiff filed objections to the M&R (DE 6). In this posture, the issues raised are ripe for ruling. For the following reasons, the court adopts in part and rejects in part the M&R as set forth herein, and dismisses plaintiff's federal claims with prejudice and declines to exercise jurisdiction on plaintiff's state law claims.

**BACKGROUND**

Plaintiff commenced this action with a motion for leave to proceed in forma pauperis on December 28, 2018, accompanied by proposed complaint, asserting state law claims based upon legal malpractice against an attorney and law firm that represented plaintiff in state court proceedings related to plaintiff's employment as a prison security guard with the North Carolina

Department of Public Safety (NCDPS).[1] Plaintiff also asserts claims under the United States Constitution and the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"). Plaintiff seeks return by defendants of fees paid by the "Southern States Benevolent Association" on behalf of plaintiff in the underlying litigation, as well as $25,006,099.00 in compensatory damages and $75,000,000.00 in punitive damages. (Compl. (DE 5) at 21).

In the M&R, the magistrate judge recommends that the district court should dismiss "most of" plaintiff's complaint for four reasons: "First, many of [plaintiff's] state law claims are barred by the statute of limitations. Second, a portion of [plaintiff's] common-law negligence claim related to his whistleblower lawsuit is not yet ripe. Third, [plaintiff's] civil conspiracy claim is barred by the intercorporate conspiracy doctrine. And [fourth], [plaintiff's] constitutional claims and his RICO claim fail to state claims upon which relief may be granted." (M&R (DE 4) at 1).

Plaintiff filed objections to the M&R, totaling 62 pages of materials, including photographs and excerpts of the record in underlying proceedings involving plaintiff, which are described in further detail in the statement of facts herein.

## STATEMENT OF FACTS

The court incorporates herein below the summary of factual allegations set forth in the M&R, for ease of reference:

> Brown worked for [NCDPS] in a correctional facility in 2012 and 2013. Compl. passim, D.E. 1–1. In early April 2012, an inmate told Brown that several

---

[1] In a separate action pending in this court, plaintiff asserts claims against his former employer and individuals associated with his former employment, arising out of alleged discriminatory adverse employment actions, which the court addresses by separate order. See Brown v. Gibson, No. 4:17-CV-180-FL (E.D.N.C.).

officers assaulted him. Id. at 2:47.[2] Brown claims that shortly after he reported the inmate's assault, his supervisors began investigating him for hiring an attorney for the allegedly assaulted inmate and failing to immediately report the possible use of excessive force. Id. at 2:66–72. Brown also claims that his employer retaliated against him for reporting the incident by making false accusations against him, denying him promotions, and giving him a negative employment reference. Id. at 2:47–85; 3:104–4:107. Finally, Brown alleges in his Complaint that his supervisors investigated him based on false allegations that he was sleeping on the job in July 2013. Id. at 3:86–94. At some point, Brown lost his job with NCDPS. Id. passim.

[Defendant] Philbeck filed a whistleblower lawsuit on Brown's behalf against NCDPS in December 2013. Id. at 6:185–87. But in July 2015, shortly before a hearing on NCDPS's motion to dismiss for lack of subject matter jurisdiction, Philbeck filed a notice voluntarily dismissing Brown's case. Id. at 6:192–194. According to Brown, Philbeck improperly filed the action in Superior Court when he should have filed it in the North Carolina Office of Administrative Hearings [NCOAH]. Id. at 192–97.

After trying to consult with Philbeck by email and receiving no response, Brown filed a pro se petition for a contested case hearing before NCOAH challenging his termination from NCDPS. Id. at 7:242–244; 14:469–472. Philbeck also filed a petition for contested case hearing on Brown's behalf. Id. at 244–246. NCOAH consolidated the two cases and eventually held a trial, which Brown alleges Philbeck did not know about until a couple of hours before it was scheduled to begin. Id. at 7:245–246; 14:457–464. Brown claims that during the trial, Philbeck did no more than briefly cross-examine the state's witnesses, refused to subpoena any of the witnesses Brown suggested, and would not let Brown testify about what he thought were dispositive issues. Id. at 7:246–8:253. The Complaint also alleges that Philbeck missed the deadline to file a proposed decision with NCOAH. Id. at 9:283–287.

The Administrative Law Judge ("ALJ") presiding over the case found that Brown had presented no evidence in his favor and ruled for NCDPS. Id. at 9:287–292. The ALJ's decision explained that Brown could seek review of the decision from the North Carolina Court of Appeals. Id. at 9:293–295. Even so, Philbeck filed a petition for judicial review in Superior Court instead of the North Carolina Court of Appeals. Id. at 9:293–300.

Brown asserts that is likely that the petition has been dismissed. Id. at 9:291–292. But the court has reviewed the file maintained by the Wake County Clerk of Court and determined that this action is still pending. See Brown v. N.C. Dep't of

---

[2] Brown consecutively numbered each line of his Complaint. References to the Complaint will be in a [Page]:[Line Number] format. For example, this citation refers to materials on line number 47, which the reader can find on the second page of the Complaint.

3

Pub. Safety, Case No. 15-CV-005404 (N.C. Sup. Ct. Wake Cty. filed Apr. 23, 2015). Filed with the petition for judicial review is the Final Decision of the ALJ, which was issued on March 24, 2015. Id.

After Brown lost his job at the prison, he filed for unemployment benefits. Id. at 10:323. NCDPS countered that he was terminated for misconduct (sleeping on the job) and was thus not entitled to unemployment benefits. Id. at 10:323–325. Ultimately, NCDPS prevailed and Philbeck filed a petition for judicial review on Brown's behalf in Superior Court in Wake County. Id. at 10:348–349. NCDPS moved to dismiss the petition for improper venue. Id. at 11:350–352. The Superior Court agreed with NCDPS and dismissed the petition on September 14, 2015. Id. at 11:353–355. Brown claims that Philbeck should have filed the petition for judicial review in Pitt County, where Brown lived, instead of Wake County. Id. at 10:347–11:355. Philbeck did not appeal the dismissal order. Id. at 11:359–360.

In December 2015, Philbeck called to check in with Brown. Id. at 19:629–630. Brown alleges that this phone call was a ploy by Philbeck to discover his current employer so that Dennis Daniels, Brown's former boss at the prison, could get him fired from his new job. Id. at 19:629–633.

(M&R (DE 4) at 1-4).

## COURT'S DISCUSSION

A. Standard of Review

The district court reviews de novo those portions of a magistrate judge's M&R to which specific objections are filed. 28 U.S.C. § 636(b). The court does not perform a de novo review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982). Absent a specific and timely filed objection, the court reviews only for "clear error," and need not give any explanation for adopting the M&R. Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir.1983). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

4

Under 28 U.S.C. § 1915(e)(2), the court may dismiss an action that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

A complaint may be found frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). Additionally, a complaint fails to state a claim if it does not "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," sufficient to "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quotations omitted). In evaluating whether a claim has been stated, "[the] court accepts all well-pled facts as true and construes those facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement [,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted).

B.    Analysis

    1.    Federal claims

The magistrate judge correctly determined that plaintiff's federal claims under the United States Constitution and RICO must be dismissed for failure to state a claim upon which relief can be granted. The court adopts in full the analysis of the M&R as to these claims. The court writes separately to augment the analysis of the M&R.

        a.    Constitutional Claims

42 U.S.C. § 1983 provides a cause of action against "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State" causes the "deprivation of any rights,

5

privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege . . . that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988). "[T]he party charged with the deprivation must be a person who may fairly be said to be a state actor." Id. at 49. "[M]erely private conduct, no matter how discriminatory or wrongful, fails to qualify as state action." Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 181 (4th Cir. 2009). "A private attorney who is retained to represent a [party] is not acting under color of state law, and therefore is not amenable to suit under § 1983." Deas v. Potts, 547 F.2d 800, 800 (4th Cir. 1976).

Here, defendants, who are a private attorney and his law firm, are not state actors. Plaintiff suggests, nonetheless, that defendants should be treated as state actors because they acted in concert with or in conspiracy with NCDPS officials. A private party may be considered a state actor by "conspiring with" a party acting under color of state law. Dennis v. Sparks, 449 U.S. 24, 28 (1980). It is a "weighty burden to establish a civil rights conspiracy." Hinkle v. City of Clarksburg, W.Va., 81 F.3d 416, 421 (4th Cir. 1996). A plaintiff must allege facts permitting a reasonable inference that "each member of the alleged conspiracy shared the same conspiratorial objective," in that they "positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan." Id.

Plaintiff has not alleged facts permitting an inference of a civil rights conspiracy between his private attorneys and government officials. Rather, plaintiff asserts conclusorily that defendant Philbeck "secretly colluded" with NCDPS officials Dennis Daniels and Gary Parks. (E.g., Compl. (DE 5) at 2). It is facially implausible, however, that plaintiff's private attorneys in litigation against state government agencies and officials, conspired with such officials to deprive plaintiff of his constitutional rights. Plaintiff's assertions of negligence, legal malpractice, and breaches of fiduciary

6

duty, on the part of his attorneys do not translate to showing a meeting of the minds between defendants and plaintiff's litigation adversaries to deprive plaintiff of his constitutional rights.

Plaintiff suggests that an interaction between plaintiff and defendant Heydt Philbeck in December 2015, is sufficient to establish a claim based upon a civil rights conspiracy. For example, plaintiff alleges:

> In December 2015, Heydt Philbeck called to ask me how I was holding up. He was really calling on behalf of Dennis Daniels to find out what I was doing for employment and to find for Dennis Daniels what he could do to interfere with my at will employment and possibly get me terminated from my current employer.
>
> When Hedyt Philbeck didn't get the information Dennis wanted. Dennis allegedly arranged for me to have an interview at the Driver's License Office in Greeville, North Carolina in January 2016. They had numerous documents for me to sign—everything except my application. I unintentionally mentioned that I was a licensed realtor. Mr. Daniels allegedly hired an individual who posed as a real estate investor who claimed his name was Donnie Spruill. Donnie Spruill tried to record me and make it appear that I was agreeing to accept kickbacks.

(Compl. (DE 5) at 19-20). While the facts alleged describe an initial conversation between plaintiff and his attorney in December 2015, the facts alleged do not support an inference of a conspiratorial motive or agreement between defendant Philbeck and NCDPS official Dennis Daniels. Also lacking is a plausible factual connection between the initial conversation between plaintiff and his attorney in December 2015, and the ultimate adverse conduct of which plaintiff complains, hiring by Dennis Daniels of an individual, Donnie Spruill, who tried to record plaintiff and "make it appear that [he] was agreeing to accept kickbacks." (Id.).

In sum, plaintiff's constitutional claim against defendants relies upon a conclusory assertion

of a civil rights conspiracy, which is not reasonable to infer from the facts alleged. Where the "complaint pleads facts that are merely consistent with [the] defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Iqbal, 556 U.S. at 678 (quotations omitted). Plaintiff's "complaint has not nudged his claims of invidious discrimination across the line from conceivable to plausible." Id. at 680 (quotations omitted). Therefore, plaintiff's constitutional claim under § 1983 must be dismissed for failure to state a claim.

        b.       RICO claim

Under RICO, it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). A RICO "enterprise" is "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). An association in fact enterprise must be "a group of persons associated together for a common purpose of engaging in a course of conduct," established through "ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." Boyle v. United States, 556 U.S. 938, 948 (2009).

Plaintiff's RICO claim fails for at least the same reasons as his § 1983 claim, in that plaintiff has failed to allege defendant Philbeck was associated with others, including NCDPS officials or Vidant Medical Center employees, through "a common purpose of engaging in a course of conduct." Id. For the reasons stated above with respect to plaintiff's § 1983, plaintiff has not alleged facts permitting an inference of common purpose between defendants and other individuals alleged to have injured plaintiff.

In addition, plaintiff has not alleged facts permitting an inference that defendants, if so

8

associated, acted to "conduct or participate" in such enterprise's affairs "through a pattern of racketeering activity." 18 U.S.C. § 1962(c). In order to establish such participation, plaintiff must allege "that the defendants conducted or participated in the conduct of the 'enterprise's affairs,' not just their own affairs." Reves v. Ernst & Young, 507 U.S. 170, 185 (1993). In addition, plaintiff's assertions of state law claims of breach of contract, negligence, legal malpractice, breach of fiduciary duty, and fraud, do not establish requisite pattern of racketeering. At bottom, the asserted "scheme in the present case . . . does not resemble the sort of extended, widespread, or particularly dangerous pattern of racketeering which Congress intended to combat with federal penalties." Flip Mortg. Corp. v. McElhone, 841 F.2d 531, 538 (4th Cir. 1988).

In sum, plaintiff's claim under RICO must be dismissed for failure to state a claim upon which relief can be granted.

c. Dismissal with Prejudice

"[T]he nature of dismissal is a matter for the discretion of the district court." Adbul-Mumit v. Alexandria Hyundai, LLC, 896 F.3d 278, 292 (4th Cir. 2018); see Carter v. Norfolk Cmty. Hosp. Ass'n, Inc., 761 F.2d 970, 974 (4th Cir. 1985) ("[D]ismissal under Rule 12(b)(6) is . . . with prejudice unless [the court] specifically orders dismissal without prejudice. That determination is within the district court's discretion."). In exercising this discretion, the court is not required to "resolve pleading deficiencies, regardless of previous opportunities to amend or other extenuating circumstances." Adbul-Mumit, 896 F.3d at 292.

In this case, dismissal of plaintiff's federal claims must be with prejudice due to a combination of factors: 1) plaintiff's federal claims suffer from multiple fundamental defects; 2) further amendment likely will be futile, as demonstrated through proliferation of factual allegations, to no avail, in plaintiff's objections following the M&R setting forth defects in the federal claims;

9

and 3) substantial overlap in underlying factual allegations as between the instant case and Brown v. Gibson, No. 4:17-CV-180-FL (E.D.N.C.). Accordingly, plaintiff's federal law claims are dismissed with prejudice.

2. State Law Claims

The court "may decline to exercise supplemental jurisdiction" over a state law claim included in an action on the basis of supplemental jurisdiction under 28 U.S.C. § 1367(a), if

(1) the claim raises a novel or complex issue of State law,
(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
(3) the district court has dismissed all claims over which it has original jurisdiction, or
(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C.A. § 1367(c). Here, plaintiff asserts state law claims of breach of contract, negligence, legal malpractice, breach of fiduciary duty, fraud, and conspiracy. Where the court has dismissed with prejudice the only claims over which it has original jurisdiction, and where plaintiff's state law claims substantially predominate over the federal claims in this action grounded in alleged attorney malpractice, the court in its discretion declines to exercise supplemental jurisdiction over plaintiff's state law claims.

In this part, the court rejects the recommendation of the magistrate judge to dismiss plaintiff's state law claims due to statute of limitations, lack of ripeness, or failure to state a claim. Plaintiff's state law claims instead are dismissed without prejudice pursuant to 28 U.S.C. § 1367.

**CONCLUSION**

Based on the foregoing, upon frivolity review pursuant to 28 U.S.C. § 1915(e)(2)(B), the court

adopts in part and rejects in part the M&R (DE 4) as set forth herein. Upon frivolity review under 28 U.S.C. § 1915(e)(2), plaintiff's federal claims, comprising claims under the United States Constitution and claims under RICO, are DISMISSED WITH PREJUDICE. Plaintiff's state law claims are dismissed without prejudice pursuant to 28 U.S.C. § 1367. The clerk is DIRECTED to close this case.

SO ORDERED, this the 1st day of July, 2019.

LOUISE W. FLANAGAN
United States District Judge